IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROGER NELSON,

    Plaintiff,

vs.                                                       Case No.: 5:05-cv-52-RH/WCS

CORRECTIONS CORPORATION of AMERICA,

    Defendant.
_____/

## **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## **AND MEMORANDUM OF LAW**

COMES NOW, Plaintiff, ROGER NELSON, by and through his undersigned attorney and moves the Honorable Court to grant summary judgement in favor of the Plaintiff in that there is no dispute of facts with regards to Defendant's pattern and policy of refusing to properly investigate complaints of racial discrimination. Such systematic failure to properly investigate allegations of race discrimination not only violated CCA written policy but it also created a hostile work environment for Plaintiff and other African Americans.

1

## I.  STANDARD OF REVIEW

The standard that the court should use to determine whether summary judgment should be awarded or not is set forth in Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505 (1986) ("whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict").

Yet on the other hand, the non-moving party must present more than conclusory allegations to defeat a motion for summary judgment.  After the moving party makes its motion for summary judgment , the non-moving party has to show more than a metaphysical doubt as to the material facts in order to avoid summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  The Court should enter summary judgment against the non-movant if the non-movant fails to establish any element which is essential to the non-moving party's case.  Chanel, Inc., v. Italian Active Wear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1993) ("To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.") Such a failure of proof on an essential element of the non-movant's case renders all other facts immaterial and renders the non-moving party's case appropriate for summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## CCA GUIDELINES

In the present case, the employer has very clear written guidelines about how to handle complaints of discrimination of any kind. The guidelines are found in CCA Corporate and Facility Policy No. 3.17 which provides in pertinent part:

3-17.1 PURPOSE

To provide a work environment free from tensions created by ethnic, racial, age-based, sexual or religious remarks, animosity, unwelcome sexual advances or requests for sexual favors or other such conduct....

3-17.3 DEFINITIONS:

....Harassment- Harassment includes, without limitation, verbal harassment based on race, sex, national origin, age, religion or handicap (for example derogatory statements, slurs, etc.); physical harassment based on race, sex, national origin, age, religion or handicap (e.g. assault, physical interference with normal work or involvement); and visual harassment based race, sex, national origin, age, religion or handicap (e.g. posters, cartoons, drawings, etc.).....

    3-17.5 PROCEDURES:

        A.2    Charges of conduct described will herein be promptly and throughly investigated and a report will be made to the employee concerning the results of the investigation.....

        Ex 1 Excerpts CCA Policy 3-17

Therefore, in instances of allegations of harassment or unlawful discrimination CCA policy dictates that an investigation be done to determine the extent of improper activities. Yet, the record reflects that although there have been numerous instances of racial discrimination brought to the attention of CCA's upper management, no formal investigation of allegations of discrimination has ever been done at Bay County Correctional Facility for the last ten years. Exhibit (Ex) 2.  Deposition Hubbard p_13, line23- p14, l ine 14.  At the same, approximately 100 workplace investigations were done in that same 10 year period. Ex 2 Deposition Hubbard p_13, line23- p14, l ine 14.

    This failure to investigate racial discrimination subjects the Defendant to liability based on two different theories of law, disparate impact and intentional discrimination. A more specific discussion of the two theories follows below.

## DISPARATE IMPACT

The Civil rights Act of 1991 essentially restored the standards set forth in Griggs v Duke Power   401 U.S. 424 (1972) which defines disparate impact. Griggs v Duke Power states that disparate impact occurs when the employer has a policy or practice which adversely affects African Americans or other persons in a protected class, more then persons outside of the protected class. In the case at bar, CCA has a practice and unwritten policy which starkly and adversely impacts on Plaintiff and other African Americans: that is CCA's policy of not ever doing an investigation of the allegations that involve racial discrimination. Ex 1 Deposition of Hubbard p__1___. Lasso v Woodmen of Worldlife Insurance Co. 741 F2d 1241 ( 10th Cir 1984), cert denied, 471 U.S. 1099 (1985) ( holding that disparate impact analysis can be used for individual plaintiffs); See also Donnelly v Rhode Island Board of Governors,110 F.3d 2 (1rst Cir 1977).

In five known instances that Defendant was aware of allegations or activities reflecting racism, the Defendant took no or almost no corrective action. The pattern is clear, unequivocal and unrefuted. Examples of Defendant's lack of response to allegations of racism follow:

1.    Wardern Blumberg stated that he has heard the "n" word used in the work place at CCA in Bay County yet he calls no investigation. Ex. 3 Deposition of  Blumberg

p____1_____.[1]

2.	Warden Blumberg stated that he was told that C.O. Kline used the "n" word at CCA in Bay County. Ex 3 Deposition of Blumberg  p____1____.

3.	Warden Blumberg stated that he himself has used the "N" word at work at CCA but no investigation of racial discrimination have been done. Ex. 3 Deposition of Blumberg p_____1____.

4.	Correctional Officer Stansberry wrote a statement to Warden Watson and gave him the statement alleging that she heard C.O. Dan Russell using the "n" word on several occasion, but no investigation was done. Ex 4 Affidavit Stansberry ; Ex 2 Deposition of Hubbard p_13, line23- p14, l ine 14. , Ex 5 Deposition of Watson p_1_.[2] Russell himself was questioned about his statements by one of his supervisors. He denied using the "n"word and no further questioning was done. The primary investigator Hubbard, was not called in and he did no investigation.  Ex 1 Deposition of Hubbard p_13, line23- p14, l ine 14. Ex 6 Deposition of Mr Russell.

5.	Correctional Officer Stansberry verbally complained to her Chief of Security,

---

[1] Deposition of Warden Blumberg to be provided within the next week as the Court reporters have not yet completed it and are presently transcribing it and other depositions.

[2] Deposition of Warden Watson to be provided within the next week as the Court reporters have not yet completed it and are presently transcribing it and other depositions

Dan Kelloway, about Correctional Officer Dan Russell making racial jokes using the "n" word but Chief Kelloway took no corrective action. Ex 4 Affidavit of Stansberry Ex 6 Deposition of Russell p___1___.[3]

      6.    Mr. Nelson complained of racial discrimination against African Americans when they were subjected to different discipline. There was no corrective action taken. Ex.7 Affidavit of Mr. Nelson.

      7.    Mr. Nelson complained of racial discrimination to CCA Human Resources on several occasions. No corrective action was taken. Ex 7  Affidavit of Mr. Nelson.

      8.    C.O. Cecila Jones complained of racial discrimination to John Peterson, CCA Regional Diversion Manager over the Bay County Correctional Facility. She complained about C.O. Puckett telling her repeatedly that she better "know her place." Mr. Hubbard the investigator was not called and no full fledged investigation was done. Ex. 8. Affidavit of Cecila Jones, Ex 2 Deposition of Hubbard p_13, line23- p14, l ine 14.

Warden Blumberg admits in deposition that he has states to employees at CCA that whites and Blacks should not date and that is his belief. No investigations are done. Deposition of Blumberg p__1___. Deposition of Hubbard p_13, line23- p14, l ine 14.

---

    [3]    Deposition of Mr Russell to be provided within the next week as the Court reporters have not yet completed it and are presently transcribing it and other depositions.

Yet, at the same time period there have been about 100 investigations involving sexual impropriety, sexual harassment, and contraband. Ex 2 Deposition Hubbard p_13, line23- p14, l ine 14. Clearly, CCA has demonstrated by its unbroken pattern of behavior of not investigating any allegations of racial discrimination that, CCA is not concerned with racial discrimination which will go unpunished and can proliferate in the workplace with immunity despite the clearly written guidelines of its own policies.

CCA's refusal to follow its own rules and to investigate and discipline for racial discrimination creates a hostile environment for the African Americans. Ex7 Affidavit of Roger Nelson. It leaves them vulnerable, afraid, and encourages white employees to be abusive as the white employees have seen that there are and no consequences for racist discriminatory behavior.

This unwritten but consented to policy of refusing to thoroughly investigate and refusing to document racial discrimination has had an adverse impact on Plaintiff and all African Americans working at Bay County Correctional Facility. Ex.7. Affidavit of Roger Nelson.

**FAILURE TO INVESTIGATE**

The policy of non-investigation and disinterest in allegation of racism is not only oppressive and unfair on its face, it has also left people in the workplace to manufacture stories and concoct wrong doing against Plaintiff and other African Americans to get them fired, without fear of being found to be telling falsehoods.

Moreover, in addition to the clear violation of law because of the policy of non-investigation of racial matters, case law indicates that even <u>one</u> failure to properly investigate allegations of racial discrimination are actionable as employers have affirmative obligations to assure that the workplace is free of discrimination.

An employer becomes directly liable for a hostile work environment created by an employee if the employer's negligence causes the actionable work environment.  <u>Wilson v. Tulsa Junior College</u>, 164 F.3d 534 (10th Cir. 1998) In the case at bar, Defendant was notified on numerous occasions that discriminatory actions were occurring. Yet, Defendant failed to respond adequately in that no investigations was done.  (Exhibit 2, Deposition Hubbard p_13, line23- p14, l ine 14.. Plaintiff contends that the Supreme Court has stated that such behavior of the employer is actionable.  <u>Faragher v. City of Boca Raton</u>, 118 S. Ct. 2275, 2293 (1998); *<u>Burlington Indus., Inc. v. Ellerth,</u>* 118 S. Ct. 2257, 2270 (1998); <u>Harris v. Forklift Sys., Inc</u>., 510 U.S. 17, 21 (1993); <u>Meritor Sav. Bank v. Vinson</u>, 477 U.S. 57, 65 (1986). stand for the proposition that an employer is subject to direct liability based on an employer's failure to

9

respond after it knew or should have known of the supervisor's alleged harassment or of a tangible job action.

It is appropriate for courts to apply the standards of Faragher and Ellerth to harassment cases based on race discrimination under Title VII. *See, e.g.,* Livingston v. Adirondack Beverage Co., 141 F.3d 434 (2d Cir. 1998) (holding that a supervisor's use of the term "spic" three times to an Hispanic employee was sufficient to create a hostile environment); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581 (5th Cir. 1998) (applying *Faragher and Ellerth* to a involving the discharge of a white female employee due to her romantic relationship with a black male employee); Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264 (10th Cir. 1998) (holding that the standards for hostile-environment racial harassment are the same as those for hostile-environment sexual harassment).

Therefore, Defendant, CCA, cannot avail itself of the affirmative defense that it took adequate remedial measures once it knew of discriminatory actions. The affirmative defense available to a Defendant who is defending against being held vicariously liable for it's supervisory employee's discriminatory actions in creating a hostile work environment is not available to an employer whose liability is based upon discriminatory conduct of **a supervisor** leading to a tangible employment action. See, e.g. Wright-Simmons v. City of Oklahoma City, 155 F. 3d 1264, 78 FEP 105 (10th Cir. 1998); Lintz v American General Finance, Inc., 50 F. Supp. 2d 1074.

For this failure to:

1. Prevent and prohibit a gender based hostile environment and

2. Do any investigation.

CCA should be liable.  Faragher; Burlington.

10

In addition, Plaintiff contends that Defendant's knowing inaction or failure to take real remedial action subjects Defendant to liability. The only way to avoid liability is for the employer's remedial action must be reasonably likely to prevent the misconduct from reoccurring <u>Kilgore v. Thompson & Brock Mgmt. Co.</u>, 93 F.3d 752 (11 Cir. 1996). See <u>DelGrande v. Temple University</u> 1997 U.S. Dist. Lexis 12122. Under Title VII, an employer is liable for sexual harassment if the employer "knew or should have known of the harassment and failed to take proper remedial action <u>Burns v. McGregor Ele. Indus., Inc.</u>, 955 F.2d 559, 564 (8th Cir 1992). <u>Katz v. Dole</u>, 709 F.2d 251, 256 (4th Cir. 1983) An employer must take prompt, remedial action reasonably calculated to end the harassment.

An employer can take prompt, remedial action by fully investigating and disciplining the harasser and by placing him on probation for ninety days, and warning him that further misconduct would result in discharge. <u>Barrett v. Omaha National Bank</u>, 726 F.2d 424 (8th Cir. 1984). Defendant did none of these things in the case at bar.

For this failure after actual notice of allegations of discrimination to:

1.	Do any investigation, and

2. To offer real remedial measures, CCA should be liable. <u>Faragher</u>,

The types of employer's responses to allegations of discrimination that have been found reasonable have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings to refrain from harassing conduct, reprimands and warnings that future misconduct could result in progressive discipline, including suspension and termination. <u>Cadena</u> 18 F.Supp.2d 1220.

11

None of these actions were taken. Exhibit 2 Deposition Hubbard p_13, line23- p14, line 14

An employer violates Title VII "by creating or condoning an environment at the workplace which significantly and adversely affects an employee because of his race or ethnicity, regardless of any other tangible job detriment to the protected employee." Henson v. City of Dundee, 682 F 2d 897, 901 (11th Cir. 1982) (In Henson, the Eleventh Circuit applied this interpretation of Title VII in a sexual harassment case.)

Plaintiff also seeks summary judgment based upon the unrefuted biased investigation done by investigator Eddie Johnson and believed by Warden Kevin Watson as a basis for Plaintiff's termination. In essence, Plaintiff contends that the investigation done against him was so shoddy and out of line with prior CCA investigations that it clearly reflects a pre investigation desire to fire Nelson on the part of both Watson and Mr. Johnson.

More specifically, the investigation against Mr Nelson can be described as follows:

1.    Warden Watson failed to tell Mr. Johnson that one correctional officer had overheard two other correctional officers planning how to instruct Ms. Bryant in order to make statements against Mr. Nelson until after Mr. Johnson had completed his investigation and returned home, about a three hours drive away. Ex 5. Deposition of Watson p___1____; Ex 11 Incident Statement Petersen, Ex 12 Memo from Johnson to Watson.

2.    Mr. Johnson did not return to Bay County Correctional Facility to investigate these allegations of false statements of Mr. Nelson's accuser but made several brief

telephone calls to the witnesses who denied all wrongdoing. Ex13  Deposition of Johnson p__1__.[4]

3. Mr. Johnson did not read any of Mr. Nelson's military records or speak with his commanders to learn that Mr. Nelson was on active duty and deployed out of town at the time of the alleged comments to Ms. Bryant . Ex13  Deposition of Johnson p__1___.

4. Mr. Johnson choose to believe Ms. Bryant over Mr. Nelson when all other "he said she said" controversies at CCA were found to be unfounded as it was one person's word against another. Ex 13 Deposition Johnson p___, l___.

Furthermore, Plaintiff contends that there was different treatment of white males for having or asking for a sexual relationship with a female subordinate then African Americans received. When Warden Watson had a personal intimate relationship with his female subordinate, he received no serious consequences. Ex 2. Deposition of Hubbard p34 line23- pg 39 line 5. There was no investigation. He was not fired. He asked for a demotion, left town and received no loss in of salary. Ex.5 Deposition of Watson p____l____.

At the same time, the same white male, Kevin Watson, who was aware that several white employees had alleged falsehoods against Nelson before, took the word of one woman against Nelson when she alleged that Mr. Nelson made a pass at her at Wal-Mart. Exhibit 14 Problem Solving Memo of Nelson Termination.

---

[4] Deposition of Mr Johnsonto be provided within the next week as the Court reporters have not yet completed it and are presently transcribing it and other depositions.

13

What is even more proof of disparate treatment of African Americans and whites is that even if Mr. Nelson's accuser were to be believed, Then Mr. Nelson's comments do not actually reflect a bases for termination because they are NOT sexual harassment under law or as defined by CCA's own policy pursuant to CCA policy 3-17. Ex 1.

In her accusations, Ms. Bryant stated the first time Mr Nelson approached me and said anything sexual was while he was Wal-Mart, it was a one time incident. Ex 5 Deposition Watson. P__ l__

Clearly, this was not ongoing, not at the workplace, and not so oppressive as to merit any discipline at all let alone termination. Specially in light that the decision maker, Kevin Watson, himself was involved with a sexual relationship with a subordinate which clearly gone beyond the initial inquiry about whether Mr. Watson's female subordinate was interested in him. Ex 13 Watson Deposition p__ l__.

The investigation failed to meet even the most basic standards of fairness for the following reasons: Mr. Johnson was allegedly selected to do the investigation for fairness and impartiality but Mr. Johnson was briefed by Warden Watson about prior allegations of sexual harassment against Plaintiff that were determined to be unfounded. Mr Johnson actually read the previous investigations prior to completing this investigation. Therefore all pretense of impartiality and fresh new unbiased look was negated by Warden Watson's actions. Ex 13 Deposition Johnson p __ l___.

Accordingly, for all of the foregoing reasons, the Plaintiff respectfully requests this Honorable Court to grant Plaintiff's Motion for Summary Judgment.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished via electronic filing with the Court to Vincent Lynch, Esq. Tony B. Griffin, Esq., Vera Brooks, Esq., Anne Jones, Esq. and Vera Brooks, Esq. of Ruden, McClosky, Smith, Schuster & Russell, P.A. Attorneys for Defendant, at 401 East Jackson Street, Suite 2700, Tampa, FL 33602-5841, on this 13[h] day of January, 2006.

/s/ Cecile M. Scoon
_____
CECILE M. SCOON, ESQ.
FLA. BAR # 834556
ATTORNEY FOR PLAINTIFF
26 EAST 8TH STRRET
PANAMA CITY, FLORIDA 32401
(850) 769-7825

15